UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| STEVEN KAUTZ, | : Case No. 3:20-cv-244 |
| Plaintiff, | : |
| vs. | : District Judge Michael J. Newman |
| | : Magistrate Judge Peter B. Silvain, Jr. |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**REPORT AND RECOMMENDATIONS**[1]

Plaintiff Steven Kautz brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Second Statement of Errors (Doc. #24), the Commissioner's Memorandum in Opposition (Doc. #26), Plaintiff's Reply (Doc. #28), and the administrative record (Doc. #11).

**I.     Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

In the present case, Plaintiff applied for benefits on October 20, 2016, alleging disability due to several impairments, including migraine headaches; episodic paroxysmal hemicrania, not intractable; mild intermittent asthma; PTSD; depression; generalized anxiety disorder; and bipolar disorder. After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Deborah F. Sanders. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] She reached the following main conclusions:

> Step 1: Plaintiff has engaged in substantial gainful employment during the following periods: July 2018 through the present. However, there has been a continuous 12-month period(s) during which Plaintiff did not engage in substantial gainful activity. The remaining findings address the period(s) in which Plaintiff did not engage in substantial gainful activity.
>
> Step 2: He has the severe impairments of migraine headaches; episodic paroxysmal hemicrania, not intractable; mild intermittent asthma; PTSD; depression; generalized anxiety disorder; and bipolar disorder.
>
> Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes, or scaffolds; avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dust, gasses, and poorly ventilated areas; never work at unprotected heights or around dangerous machinery; never operate a motor vehicle; avoid concentrated exposure to excessive vibration such as jackhammering; and never work in environments above a noise level of 3 (as defined by the SCO). Mentally, he can perform routine 2-3 step tasks, but not at a fast production rate pace, and no strict production quotas; occasional interaction with coworkers, but no tandem or shared tasks; occasional interaction with supervisors, but no over the shoulder supervision; and occasionally interact with the public, but not in a customer service capacity."

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

       He is unable to perform any of his past relevant work.

Step 5:  He could perform a significant number of jobs that exist in the national economy.

(Doc. #11-2, *PageID* #s 57-68). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 69.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #11-2, *PageID* #s 57-69), Plaintiff's Second Statement of Errors (Doc. #24), the Commissioner's Memorandum in Opposition (Doc. #26), and Plaintiff's Reply (Doc. #28). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.**  **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the

claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III. Discussion**

In his Second Statement of Errors, Plaintiff raises five challenges to the ALJ's decision. (Doc. # 24, *PageID* #s 745-760). Specifically, Plaintiff contends that (1) the ALJ erred by concluding that Plaintiff engaged in substantial gainful activity, and that this matter should be remanded to consider new evidence establishing an unsuccessful work attempt; (2) the ALJ's findings and conclusions regarding Plaintiff's anxiety and PTSD are unsupported by substantial evidence; (3) the ALJ's credibility determination is unsupported and improper; (4) the reviewing psychologists did not consider all relevant evidence in the record, including Plaintiff's PTSD diagnosis; and (5) the ALJ did not give appropriate weight to the vocational expert's testimony. *Id*. According to Plaintiff, each of these reasons support a finding that this matter should be remanded to the Commissioner. *Id*. at 760. In response, the Commissioner maintains that substantial evidence supports the ALJ's decision and should, therefore, be affirmed. (Doc. #26, *PageID* #s 764-779).

**A. Substantial Gainful Activity**

Plaintiff's challenge to the ALJ's analysis of the first step of the sequential evaluation process is two-fold. First, Plaintiff contends that the ALJ failed to follow the applicable regulations in determining that Plaintiff engaged in substantial gainful activity from July 2018 through present. (Doc. #24, *PageID* #s 746-748). Specifically, Plaintiff alleges that the ALJ failed to address the applicability of two regulations related to the assessment of his work activity, which if considered, would have demonstrated that he did not engage in substantial gainful activity. In his second argument, Plaintiff submits that, shortly after the ALJ hearing, he was terminated from his

4

employment during his performance review. *Id*. at 748. According to Plaintiff, his termination was the result of his impairments and, therefore, bears directly on the ALJ's determination that there was no unsuccessful work attempt. *Id*. Thus, Plaintiff requests that the Court remand this case pursuant to sentence six of 42 U.S.C. § 405(g) so that the ALJ can review this new evidence relating to Plaintiff's alleged unsuccessful work attempt. *Id*. at 748-749. Finding no merit in either of these arguments, the undersigned will address each in turn.

In support of his first argument, Plaintiff cites 20 C.F.R. § 404.1573(b), which provides that work that "involves minimal duties that make little or no demands on you and that are of little or no use to your employer" will not constitute substantial gainful activity. At the hearing, Plaintiff explained that while he had been working for about five months, he was "in training, so [he was] actually with someone right now and [he] just basically, observe[s]." (Doc. #11-2, *PageID* #81). According to Plaintiff, this testimony alone is sufficient to demonstrate that his work did not constitute substantial gainful activity pursuant to 20 C.F.R. § 404.1573(b) and, thus, the ALJ's failure to consider this regulation is reversible error. (Doc. #24, *PageID* #747).

Similarly, Plaintiff points out that the ALJ failed to take into consideration his testimony that his "saving grace" was that he was only in training, which allowed him to take breaks to sit for a half an hour when needed. *Id*. (citing Doc. #11-2, *PageID* #101). Here, Plaintiff notes that he would not be able to continue to take these breaks when he was finished with training and, therefore, the ALJ should have found that his ability to take frequent breaks as a trainee amounted to a "special condition" under 20 C.F.R. § 404.1573(c)(2), supporting a finding that he was not engaged in substantial gainful activity. *Id*. at 747-748.

In considering whether a claimant's work effort was reduced to the nonsubstantial gainful activity level, Social Security Ruling 84–25 provides that the ALJ cannot "rely solely on

5

information from the worker." Soc. Sec. R. 84-2, 1984 WL 49799, at *3 (Soc. Sec. Admin. 1984). Instead, "if impartial supporting evidence is not already a part of the claims file, confirmation with the employer is required." *Id*. Here, Plaintiff has failed to point to any evidence beyond his own testimony to support his allegations. Therefore, in the absence of impartial supporting evidence, the ALJ appropriately found that Plaintiff's allegations did not amount to "special condition[s]" under 20 C.F.R. § 404.1573(c)(2).

The Court is likewise unconvinced by Plaintiff's second argument that this matter should be remanded to consider the new evidence relating to his termination. Sentence six of 42 U.S.C. § 405(g) provides that "[t]he court… may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" There is no dispute by either party that the evidence related to Plaintiff's termination is both "new" and "material" as required by this provision. (Doc. #26, *PageID* #770); (Doc. # 28, *PageID* #784). The parties, do, however, dispute whether there was "good cause" for Plaintiff not submitting the evidence during the proceeding before the ALJ. *Id*.

While the Commissioner contends that there was no such good cause, Plaintiff points out that he did not learn of his termination until his performance review on January 7, 2019, which was ten days after the ALJ hearing. (Doc. #28, *PageID* #783). Acknowledging that he "theoretically" could have submitted this new evidence since the ALJ had kept the record open until January 11, 2019, Plaintiff nonetheless maintains that "it is unreasonable to impose such a short deadline on any claimant." *Id*. at 784. Similarly, Plaintiff avers that there was good cause for not submitting the evidence before the ALJ issued her decision in March 2019, as there was no guarantee that the ALJ would reopen the record to allow the new evidence, noting that "the ALJ

did not advise [Plaintiff] that she would either hold the record open, or would reopen the record, so that he could submit evidence about the outcome of his January 7 performance review, even though he testified about during the hearing." *Id*. at 784-785.

The Sixth Circuit "takes a hard[ ] line on the good cause test with respect to timing and thus requires the claimant to give a valid reason for his failure to obtain evidence prior to the hearing." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x. 713, 725 (6th Cir. 2012). Indeed, the Sixth Circuit has recognized that the "good cause" provision "was enacted, at least in part, to limit the discretion of federal judges to remand for reconsideration of new evidence." *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Thus, in order to demonstrate "good cause," the claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter*, 479 F. App'x. at 725.

In this case, Plaintiff has not demonstrated good cause for his failure to introduce the evidence of his termination before the ALJ. While the evidence was not available until after the ALJ hearing, the record remained open for four days after Plaintiff learned of his termination. Here, Plaintiff has acknowledged that he "theoretically" could have submitted this evidence within the four-day period but has failed to set forth any specific obstacles that actually prevented him from timely submitting the evidence. Moreover, even if Plaintiff could not have developed evidence relating to the cause of his termination prior to the close of the record, he could have at least notified the ALJ of the fact that he had been terminated and requested additional time to develop evidence related to the cause of his termination. Indeed, Plaintiff could have even requested that the ALJ reopen the record at some point between his performance review and the

three months before the ALJ issued her decision. Instead, Plaintiff has opted to place the blame on the ALJ since she was aware of his upcoming performance review and did not offer to keep the record open for an even more extended period of time for the purpose of submitting evidence related the performance review.

Contrary to Plaintiff's assertions, the ALJ was not under any obligation to further develop the record by informing Plaintiff that she would hold the record open for longer or that she would consider reopening the record for evidence related to Plaintiff's performance review. *See Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) ("Only under special circumstances, *i.e.*, when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record."). Notably, both Plaintiff and his counsel were also aware of his upcoming performance review at the time of the hearing and, yet, neither requested the ALJ to hold the record open for a greater period of time than the two weeks already allowed. Such circumstances do not demonstrate good cause. *See Willis*, 727 F.2d at 554 ("[C]ounsel for Appellant did not seek to have the record remain open until such time as other evidence could be made a part of the record. Nothing in the record indicates any good cause for the failure to elicit medical testimony from Dr. Giray, prior to the close of the proceedings before the ALJ."). Accordingly, the Court finds the requirements for a sentence six remand not satisfied here.

### B. Mental Residual Functional Capacity

Plaintiff also challenges the ALJ's findings and conclusions related to Plaintiff's mental impairments, stating that "[t]he ALJ erred by heavily discounting [Plaintiff's] reported symptoms of anxiety, PTSD and depression and concluding that they were not supported by substantial evidence." (Doc. #24, *PageID* #749). Among Plaintiff's examples of such errors is the ALJ's

8

finding that "there is little objective support for these complaints [of depression, anxiety, and PTSD] given the *almost entirely normal* mental status examinations in the record." *Id*. at 750 (citing Doc. #11-2, *PageID* #65). Here, Plaintiff points to 27 mental status examinations, of which 17 contained reports of him being anxious and/or depressed, 6 documented reports of him having normal affect and mood, and four reports containing no observations. *Id*. at 753. However, admittedly excluded from Plaintiff's list are three mental status exams from his Samaritan Behavioral Health, Inc. counseling sessions, which had "ambiguous" reports of his condition. *See id*. (citing Doc. #11-7, *PageID* #s 404, 408, 539).

Plaintiff also overlooks the fact that the ALJ's characterization of the "almost entirely normal mental status examinations" was directed at the objective observations beyond Plaintiff's subjective complaints documented in the examination records. (Doc. #11-2, *PageID* #65). Moreover, the ALJ clearly still considered the subjective complaints found in the medical status exams as evidenced by his summary of all the reports as well as his imposition of mental functional limitations in Plaintiff's residual functional capacity (RFC). *See id* at 63, 65-66. On this point, it is notable that the ALJ found each of these complained-of diagnoses—anxiety, PTSD, and depression—to represent severe impairments for Plaintiff. (Doc. #11-2, *PageID* #60). Additionally, in considering Plaintiff's subjective complaints, his medical status examinations, and the state agency medical opinions, the ALJ imposed numerous nonexertional mental limitations, stating:

> Mentally, he can perform routine 2-3 step tasks, but not at a fast production rate pace, and no strict production quotas; occasional interaction with coworkers, but no tandem or shared tasks; occasional interaction with supervisors, but no over the shoulder supervision; and occasionally interact with the public, but not in a customer service capacity.

*Id*. at 63.

The fact that the ALJ did not discuss or attribute great weight to certain pieces of evidence, such as Plaintiff's testimony or his job history, does not mean that the ALJ's decision was not supported by substantial evidence. An ALJ is not required to discuss each and every piece of evidence. This Court can consider all of the evidence in the record as a whole and determine if there is substantial evidence in light of all the evidence to support the ALJ's decision. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, at 535-536 (6th Cir. 2005); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989) (Secretary need not address every piece of evidence in the record). An ALJ is not required "to recite the medical opinion of a physician verbatim in his [RFC] finding." *Poe v. Comm'r of Soc. Sec.*, No. 08–5912, 342 F. App'x 149, 157 (6th Cir. 2009). Further, an RFC assessment is ultimately an administrative finding reserved for the ALJ. *See* 20 C.F.R. § 404.1527(d); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.").

In this case, the ALJ appropriately considered all of the evidence of record and rendered a mental RFC assessment, which was supported by substantial evidence, including Plaintiff's complaints, medical status examinations, and state medical opinions. *See* 20 C.F.R. § 416.945(a)(3) (stating that RFC assessments should be "based on all of the relevant medical and other evidence").

Finally, while it is true that the ALJ's decision must be supported by substantial evidence, it is Plaintiff who "bears the burden of proving the existence and severity of limitations caused by h[is] impairments" through step four of the sequential evaluation process. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Accordingly, it is Plaintiff's burden to prove that he has a more restrictive RFC than that assessed by the ALJ. *See Jordan v. Comm'r of Soc. Sec.*, 548

F.3d 417, 423 (6th Cir. 2008) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999)). Plaintiff, however, does not indicate through citations to the record evidence or through factual or legal analysis what functional limitations caused by his anxiety, PTSD, and depression are not already accounted for in the RFC. Significantly, the state medical opinions of record also found that Plaintiff could perform a range of simple work despite his limitations. (Doc. #11-3, *PageID* #s 125-127, 138-140). In turn, the ALJ factored these restrictions into the RFC. (Doc. #11-2, *PageID* #63). Accordingly, the ALJ's failure to impose more restrictive limitations to account for these diagnoses is not unreasonable. *See Kocher v. Comm'r of Soc. Sec.*, No. 2:14-cv-2263, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015) (Kemp, M.J.), *report and recommendation adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (Smith, D.J.) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005)) ("[W]hen 'there is no evidence in the record, of any functional limitations as a result of [an impairment] that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary."); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *Townsend v. Astrue*, No. 6:12-CV-00261-SI, 2013 WL 687042, at *5 (D. Or. Feb. 25, 2013) (failure to discuss a diagnosis is error, but harmless where record does not reveal any limitations due to the diagnosed condition). Based on the foregoing, Plaintiff has failed to meet his burden of proving that his anxiety, PTSD, and depression require a more restrictive mental RFC than that assessed by the ALJ.

    **C.**     **Severity of Plaintiff's Impairments**

Plaintiff also challenges the ALJ's assessment of his credibility, arguing that the ALJ's statement that "[o]verall, there is simply very little in the record other than the [Plaintiff's]

11

subjective allegations to support the severity of the limitation he has alleged" is "unsupported and improper." (Doc. #24, *PageID* #s 756-757).

An ALJ is not required to accept a claimant's subjective complaints but may instead properly consider the credibility of a claimant. *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). If the ALJ's credibility determinations are explained and enjoy substantial support in the record, the Court is without authority to revisit those determinations. *Sullenger v. Comm'r of Soc. Sec.,* 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). *See Beavers v. Sec'y. of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

Here, the ALJ carefully considered the totality of the evidence, applied the proper standards, and clearly explained her credibility findings. In doing so, the ALJ did not find Plaintiff's alleged impairments to be wholly uncredible but, rather, found that his "statements concerning the intensity, persistence and limiting effects of these symptoms [to be] not entirely consistent with the medical evidence and other evidence in the record[.]" (Doc. #11-2, *PageID* #64). Under these circumstances, this Court is without authority to disturb that finding.

### D. Reviewing Physicians

In his next assignment of error, Plaintiff avers that the ALJ erred in not considering the fact that the reviewing physicians, Dr. Stanley Kravitz, Ph.D. and Dr. Denise Rabold, Ph.D., did not address Plaintiff's diagnosis of PTSD by Alaine Cooley, LISW. (Doc. # 24, *PageID* #s 757-758). According to Plaintiff, this is significant because neither Dr. Kravitz nor Dr. Rabold addressed whether his PTSD amounted to the listed impairment of 12.15-Trauma Disorders. *Id*.

In reviewing a non-treating source's opinion, the regulations require that the ALJ evaluate "evaluate all medical opinions according to [the 20 C.F.R. § 404.1527(c)] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. 1999). While the ALJ's explanation in this regard must be "meaningful," the ALJ "need not give 'an exhaustive factor-by-factor analysis.'" *Kent v. Comm'r of Soc. Sec.,* 142 F. Supp. 3d 643, 650 (S.D. Ohio 2015) (Newman, M.J.) (quoting *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x. 802, 804 (6th Cir. 2011)) (internal citations omitted). Additionally, where the non-treating physicians have not reviewed the entire record, the ALJ may still afford weight to those opinions, but "the ALJ 'must give some indication' that he [or she] 'at least considered' that the source did not review the entire record[,]' " *i.e.*, "the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)) (internal citations omitted).

In the present case, Dr. Kravitz did, in fact, review LISW Cooley's mental health assessment. (Doc. #11-3, *PageID* #120). In summarizing her assessment, Dr. Kravitz notes that Plaintiff was referred to LISW Cooley for "bipolar and PTSD," though he does not expressly state that LISW Cooley herself diagnosed Plaintiff with PTSD. *See id*. Dr. Kravitz also detailed the other findings made in LISW Cooley's assessment, such as Plaintiff's complaints of anxiety, negative thoughts, depression, panic attacks, and difficulty concentrating. *Id*. He also reviewed Listing criteria for 12.04-Affective Disorders and 12.06-Anxiety Disorders. *Id*. at 121-122. Dr. Kravitz did not, however, summarize the tests administered by LISW Cooley or evaluate whether Plaintiff met the criteria for the 12.15-Trauma Disorders Listing. Similarly, at the reconsideration

13

level, reviewing psychologist Dr. Rabold evaluated the Listing criteria for impairments under 12.04 and 12.06, but did not address whether Plaintiff met the 12.15 Listing criteria. *Id*. at 134-135.

In turn, the ALJ's assessment of these opinions was meaningful. While Dr. Kravitiz and Dr. Rabold could have provided more complete summaries of the records they reviewed, the ALJ took this into consideration when she assessed their reports, affording them only "some weight" and finding that their "opinions are somewhat supported by the bulk of the objective medical evidence in the record[.]" (Doc. #11-2, *PageID* #66). Clearly, then, the ALJ subjected these opinions to scrutiny. Additionally, while the reviewing physicians should have assessed whether Plaintiff met the 12.15 Listing given his diagnosis of PTSD, it is unclear how Plaintiff was prejudiced by their failure to do so given that they did review the "paragraph B" and "paragraph C" criteria for listings 12.04 and 12.06, which are identical to the respective paragraphs in 12.15. *See Olson v. Comm'r of Soc. Sec.,* No. 17-CV-13441, 2018 WL 8244843, at *5 (E.D. Mich. Aug. 22, 2018), *report and recommendation adopted*, No. 17-CV-13441, 2019 WL 1375512 (E.D. Mich. Mar. 27, 2019)(ALJ's failure to assess whether the 12.15 Listing was met was harmless error given that he "evaluated Plaintiff's impairments under Listings 12.04 and 12.06, both of which contain "paragraph B" and "paragraph C" criteria identical to those provided by Listing 12.15.") Moreover, the ALJ herself considered whether Plaintiff met the Listing criteria for 12.15. (Doc. #11-2, *PageID* #s 61-63). Significantly, Plaintiff did not challenge the ALJ's assessment of the 12.15 Listing criteria, making any error by the physicians on this issue harmless. Consequently, this assignment of error is not well taken.

### E. Vocational Expert

Finally, in his last statement of error, Plaintiff argues that the ALJ failed to appropriately weigh the vocational expert's testimony in response to the hypotheticals posed by Plaintiff's counsel at the hearing. (Doc. #24, *PageID* #s 758-760). Specifically, he contends that the ALJ erred in not considering the vocational expert's testimony that Plaintiff would not be able to sustain employment if he were to (1) respond to instructions and supervisor criticism in an inappropriate manner over time, (2) need flexible breaks, (3) be off task for more than 15% of the day, (4) need to work incomplete isolation from other people, or (5) miss five or more days per month. *Id*. at 759 (citing Doc. #11-2, *PageID* #s 112-114).

It is well-settled that an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability. *Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 475–76 (6th Cir. 2003). Additionally, a claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1234 (6th Cir. 1993). In fashioning a hypothetical RFC to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible. *Casey*, 987 F.2d at 1235.

Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of his ability to perform work as supported by the evidence. The ALJ considered Plaintiff's testimony related to his employment and the functional limitations associated with impairments and found they were either not credible or not supported by objective, impartial evidence. As discussed previously, these findings are supported by substantial evidence. Thus, the ALJ was not required to include the additional limitations in her hypothetical question that were not supported. For these reasons, Plaintiff's statement of error is not well taken.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The ALJ's non-disability decision be affirmed; and

2. The case be terminated on the Court's docket.


August 3, 2021                                              *s/Peter B. Silvain, Jr.*
                                                                          Peter B. Silvain, Jr.
                                                                          United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).